Weight, J.,
delivered the opinion of the Court.
The plaintiff in error undertook to build a public bridge in •Giles comity, but failed to do so, and for this breach of his contract the present action was brought and resulted, in the circuit court, in a verdict and judgment against him and he lias appealed to this Court.
A reversal of the judgment is .claimed upon several grounds which wo shall proceed to consider.
The first error complained of is, that the Circuit Judge refused to dismiss the suit and discharged the rule obtained upon the attorneys .of the plaintiff below, for its dismissal, for want of authority to prosecute the same.
In this he did not err. The suit was authorized by an order of the county court of the county — composed of twenty-four Justices who wrero present — nineteen of whom voted in favor of it and five against it. These twenty-four constituted a majority of all the Justices of the county, but the nineteen did not. But this was immaterial, since it is clear that a *586 •court composed of three, or more Justices, has ample authority to transact all the ordinary business of the comity coining before it, among which must be classed the collection of debts and claims due it. To assess a tax, appropriate public money and the like, require, by the express provisions of the law, the presence of a greater number of Justices. But that is not this case. Louisville & Nashville R. R. Co. v. The County Court of Davidson County, et al., 1 Sneed, 680—682. It is next insisted the circuit court erred in permitting Edward W. Rose to be examined as a witness for the plaintiff, because he was a party to the record and interested in the event of the suit, and therefore incompetent. This position is untenable. He had no private or personal interest in this fund any more than any other inhabitant or citizen of the county ; and in such a case it is settled in this State, whatever may have been held elsewhere, that the witness is competent — his interest being too remote and contingent, as well as too minute, to disqualify him. Mayor and Aldermen of Jonesboro’ v. McKee, 2 Yer., 167; Gass’ heirs v. Gass’ executors, 3 Hum., 278, 285, 290; Corwin v. Hawes, 11 Johns., 76; Bloodgood v. The Overseers of the Poor of Jamaica, 12 do, 285. And as to the other ground, he was no party in the sense to exclude him as a witness. To be sure he was a Justice of the Peace of Giles county and the suit is in the name of himself and of the other Justices, who sue in that capacity, on their own behalf, as well as on behalf of the citizens of said county. But in legal effect, the suit is by the county of Giles, which is a public corporation, and it is (his corporation and not the Justices of the Peace or citizens of the county, that is the party to the record. They have no private interest in the suit, and their names may be rejected as surplusage. If they were all to die it would not abate, and their personal representatives could claim no share in it. 1 Hay w. R., (Anonymous) 144, Polk, Governor, v. Plummer et al., 2 Hum., 500; Maury County v. Lewis County, 1 Swan, 236, 239, 240; 1 Greenl. Ev., sec. 332. Nor do we 'think the circuit court committed any error for which the *587 judgment should be reversed, if it be error at all, in permitting this witness to prove that after the plaintiff became the contractor to build this bridge, he applied, time and again, to the county court to have Ivey substituted in his stead, which the court always refused to do, and never did, so far as he knew, receive or recognize him as a contractor. This application and refusal wore not placed on record in the county court and did not otherwise appear than in the testimony of the witness. It is true that in a suit pending in one court, oral evidence is inadmissible to supply a defect in the record of another court, by showing that an order was made or proceeding had in that court, which the clerk, by mistake, or through negligence, or from other cause omitted to enter on the record. The action of the county court, as such, could alone be shown by its records. 2 Hum., 390; 3 Dev.; 423, 4 Ird., 140. And if the right of the county to recover depended upon such a record, which in fact does not exist, the objection would be fatal. But it does not. Its right is complete, and rests entirely upon the undertaking of Ezell, the plaintiff in error, who seeks to escape liability by showing his oion release, and the acceptance of Ivey in his stead. If tins could only bo done by a record from the county court to that effect, then the testimony did him no hurt, as it is not pretended that any such record exists. If, on the other hand, it could be shown by proof in pais, or be implied from circumstances, as seems to be supposed by his counsel, in argument, then the evidence was admissible as going to show that no such release, or substitution, over took place. Angell & Ames on Corporations, (edition of 1832) 163-4. So that whichsoever way we take it, no reversal can grow out of it.
The next assignment of error arises from the rejection of the evidence of Samuel T. Anderson, who was offered as a witness for the defendant below. He had been present in the circuit court upon the trial of the suit in the name of the State of Tennessee,- for the use of Giles county v. Ivey and Herbert, and had heard Edward D. Jones and Amosa Ezell, both of whom had since died, testify in that suit; and it was *588 proposed to prove by him in this suit the subdance of their testimony, which the circuit court refused to allow. For this action of the circuit Judge, as the question is presented to us in this record, we cannot reverse ; because if there were no other difficulties in the way (and we think there are others) it is enough that it is not stated, or shown what their testimony was, so as to enable this Court to see that it was material in the case, and without which the circuit Judge cannot be put in error. We cannot look to the answer of Edward D. Jones to the bill in chancery of Willis Ham-monds to discover the materiality of his evidence, since there is no intimation in this record that that answer contains any 'thing stated by him in his testimony when examined as a witness. It may or may not have done so. We cannot affirm the existence of error in a judgment upon conjecture, or suppose that the circuit Judge rejected material and competent proof. For aught that appears, Anderson’s evidence was wholly immaterial and of no value in the case, and upon well settled law, we are bound so to presume.
It is also very plain that the circuit Judge did not err in refusing to allow the answer in chancery of Edward L>. Jones to go to the jurj as evidence. Even if he had been the agent of the county, or of the county court, to accept the bond from I-voy aud release Ezell, still the answer was but a narrative of his understa'iding of a past oeeurrenoe, after the transaction, whatever it was, had been executed, and therefore constituted no part of the res gestee, and upon well settled rules, was inadmissible against his principal. And if it had been shown that the bond of Ivey had been entrusted to him, either as clerk or agent, by the county court for safe keeping, and we were relieved of the difficulty of its being a mere narrative of a past transaction, still his answer, or statement could not be received as proof of the acceptance, by the county court, of the bond from Ivey, nor of any other agreement between the plaintiff and defendant respecting the subject; because the res gestee consisted in the fact of the custody of the bond, and its nature, and on these points only *589 could' hfs statements or declarations bo identified with those of his principal. 1 Greenl. Ev., sections 110, 111, 113, 114, 332. Farilie v. Hastings, 10 Ves., 124. But he was not the agent of the county court for any purpose whatever. He was only its cleric, and acted simply in the discharge of what he supposed to be his official duty, and he so states in his answer. He had no authority to accept the bond of Ivey, or to release Ezell; nor could he, in any way, make agreements or contracts binding upon the county. State v. Shirley, 1 Ird., 603. Mor have we been able, after a careful examination of this record, to arrive at the conclusion that the verdict of the jury is unsupported by the evidence; or that the charge of his Honor, the circuit Judge, contains any error available to Ezell. On the contrary, we are satisfied that he became the contractor to build this bridge, and that Ivey was but a sub-contractor for him, and that the county court never did accept the bond of the latter, or release the former, and that he did not, himself, so regard it. The talcing of the bond of Ivey and the subsequent suit upon it against him and Herbert, must be treated as the acts of Ezell for his own security, and not as things in any way affecting the county. The act of 1835, ch. 29, sec. 3, authorizing the appointment of commissioners to receive propositions for the building of a public bridge, does not contemplate that they shall receive or complete the contract for its construction; but only that they shall report their proceedings to the county court, and that the Court may receive and accept of such proposition, as to it shall seem best; and shall close the contract for the bridge, and have the work exeeftted. But if this were not so, and it shall bo regarded that the commissioners took the bond of Ivey and intended thereby to discharge Ezell, yet it is clear here that at the time of doing so they were functus officio and had no authority over the subject, and that the circuit Judge did right in so instructing the jury. Besides, as a matter of fact, it may very well be questioned whether the commissioners intended to release Ezell and substitute Ivey. We have seen that the record does not warrant the *590 conclusion that lie. himself, so regarded it. And one of the most intelligent witnesses in his behalf — himself a commissioner — says his release was not owm hinted at, though some of the commissioners supposed the bond of Ivey did have that effect. Bat the burthen of proof as to this substitution and release was upon the plaintiff in error, and they could not be established without clear evidence of an intention to that effect, which does not exist here. If the bond were merely intended Tor his protection, or as an additional security for the construction of the bridge, it could have no such consequence, even if the authority of the commissioners to take it were conceded. Day et al. v. Seal and Seal, 14 Johns. R., 404. The suit upon this bond did not originate with the county court, and the jury wore warranted in their verdict, that it had never been sanctioned by the proper authorities of the county. It was instituted by the plaintiff in error with the consent of the commissioners, but they had no authority over the subject. And the mere fact of finding the bond on file in the clerk’s office, without more, and especially in the face of the proof in this case, could avail the plaintiff in error nothing. And the circuit Judge did not err in so instructing the jury. It was no doubt placed there by the clerk under the mistaken belief that it was an office bond ; and the jury were certainly warranted in finding that it had never been accepted, but was in fact rejected by the county court. It is a rule that a'bond containing, instead of burthens, stipulations beneficial to the obligee, though delivered to a stranger to his use, shall, until lie reject the same, be presumed to be accepted by him. But here it is claimed that the county court had released Ezell, had yiven up the rights of the county upon him, and had accepted Ivey-in his stead. This, in place of a benefit, might work an injury to the county. The simple possession of the bond of Ivey, therefore, by the clerk, without some sanction of it by the county court, ought not in this case, we think, to have been held evidence of its acceptance and the release of Ezell. 1 Ird., 603, 604, 605; 4 do., 149; 2 Hum., 490.
*591 It may bo conceded that it was the duty of the county court to have taken bond and security of Ezell for the construction of the bridge, to have defered the payments until it was completed, and the fidelity of the execution of the contract had been attested by a committee, and that without these — and certainly until the 1st day of December, 1852, when, by the terms of the contract, the first instalment became due — neither Ezell nor Ivey could have coerced from the county the payment of anything on account of this bridge. Yet these, with other kindred questions in the record, in no way concern the plaintiff in error, and it is not for him to make them. The breach, or neglect of these duties, though it may render the Justices responsible in case of consequential damage, for violation of duty, is a matter wholly between them and the county. If the plaintiff in error, or his sub-contractor, by fair promises to the Court, or its clerk, succeeded in obtaining premature payments upon this contract and then failed to perform it, or abandoned it, how shall this be an answer to an action by the county to recover back the money, thus wrongfully withheld ? wo are unable to see. There is no reason for supposing that the payments to Ivey were officious, or without the authority of the plaintiff in error ; and we see no cause to question the correctness of the circuit Judge’s charge upon this branch of the case. Ivey had received an assignment from the plaintiff in error of a portion of the money to become due from the county, without any restriction as to the time when he might receive payment, and it was left to the jury to determine whether the payments made him were with the assent of the plaintiff in error; and we think they were well warranted in the proof, in finding in the affirmative. There is not the slightest evidence that he interposed to prevent these payments.
The jury have found that the county never accepted this bridge, or waived any cause of action it had in regard thereto, and that the same is of no value to the county. In this verdict the proof sustains them, and it is not pretended that, as to *592 1 iicsc questions, any error exists in tlie charge of the Court. Neither is there any ground for the application of the statute of limitations. The suit was instituted on the 18th of February, 1850. The plaintiff in error had until the 5th of January, 1854, to complete the bridge, and neither lie or Ivey abandoned the work until the spring of 1853. No cause of action, cither for a breach of the contract, or for the money paid under it, upon the supposition of its recision or abandonment, existed until within three years before the suit. Hurst v. Means, 2 Swan, 594, 598; 2 Sneed, 546, 549.
The judgment of the circuit court will be affirmed.